UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE RENEE BERGLUND,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No.  2:15-cv-2332-CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.   BACKGROUND

Plaintiff, born October 5, 1967, applied for SSI benefits on January 8, 2013, alleging disability beginning June 1, 2008.  Administrative Transcript ("AT") 76, 162, 223-230.  Plaintiff alleged she was unable to work due to anxiety, scoliosis, dyslexia, posttraumatic stress disorder, mental health issues, disc denigration, chemical dependency, high blood pressure, depression, lack of serotonin in the brain, and asthma.  AT 126, 145.  In a decision dated April 18, 2014, the

ALJ determined that plaintiff was not disabled.[1]  AT 44-58.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in Substantial Gainful Activity (SGA) since January 8, 2013, the application date.
>
> 2. The claimant has the following severe impairments: anxiety with panic attacks, depressive disorder, bipolar disorder, avoidant personality disorder, Post-Traumatic Stress Disorder (PTSD), schizoaffective disorder, degenerative disc disease, scoliosis, and asthma.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

    4.    After careful consideration of the entire record, the undersigned finds that the claimant has the Residual Functional Capacity (RFC) to perform light work as defined in 20 CFR 416.967(b), but she can only occasionally climb ladders, ropes, and scaffolds. She can only frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She must avoid concentrated exposure to irritants such as fumes, odors, dust, and gases. She must avoid concentrated exposure to poorly ventilated areas. She is limited to simple (defined in the Dictionary of Occupational Titles (DOT) as Specific Vocational Preparation levels (SVP) 1 and 2), routine, and repetitive tasks. She is limited to work that involves no more than occasional changes in the work setting. In addition, she is limited to no more than occasional interaction with the public, coworkers, and supervisors.

    5.    The claimant has no Past Relevant Work (PRW).

    6.    The claimant was born on October 5, 1967 and was 45 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

    7.    The claimant has a limited education and is able to communicate in English.

    8.    Transferability of job skills is not an issue because the claimant does not have Past Relevant Work (PRW).

    9.    Considering the claimant's age, education, work experience, and Residual Functional Capacity (RFC), there are jobs that exist in significant numbers in the National Economy that the claimant can perform.

    10.    The claimant has not been under a disability, as defined in the Social Security Act, since January 8, 2013, the date the application was filed.

AT 46-57.

## II. ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly evaluated the medical opinion evidence in the record when determining plaintiff's residual functional capacity ("RFC"); (2) improperly considered his own observations of plaintiff at the hearing as a reason to find her testimony less than fully credible; and (3) erroneously concluded at step five that plaintiff could perform the representative occupations of small parts assembler, bottle packer, and sewing machine operator given her RFC.

/////

/////

III. LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV. ANALYSIS

A. *The ALJ did not err in Considering the Medical Opinion Evidence*

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be

4

rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, plaintiff argues that the ALJ erred by assigning greater weight to the non-examining opinion of Dr. Dalton over the opinion of Dr. Kalman, a consultative examining psychiatrist. Plaintiff argues further that the ALJ erred by mischaracterizing the functional limitations opined by Dr. Dalton in order to make it appear as if that physician's opinion supported the limitations contained in the ALJ's RFC determination. Finally, plaintiff argues that the ALJ erred in rejecting the treating opinion of Nurse Practitioner Ngo. The court addresses each argument in turn.

        1.   Dr. Kalman

Plaintiff first argues that the ALJ erred because he assigned "reduced weight" to the examining physician opinion of psychiatrist Dr. Kalman, and assigned "substantial weight" to the non-examining physician opinion of Dr. Dalton. Plaintiff contends that the ALJ was required to assign greater weight to Dr. Kalman's opinion given his status as an examining physician and failed to provide proper reasons for discounting Dr. Kalman's opinion.

Dr. Kalman conducted a psychiatric examination of plaintiff on March 15, 2013. AT 392-95. Based on that evaluation, which consisted entirely of an interview with plaintiff, Dr. Kalman diagnosed plaintiff with a bipolar-type schizoaffective disorder, an "R/O avoidant personality disorder," chronic back pain, degenerative disc disease of the lower back, and scoliosis. AT 395. Based on his findings and diagnosis, Dr. Kalman opined that plaintiff had the following mental

limitations: "not able to interact with supervisors and co-workers"; "not able to deal with the public"; "able to understand, remember and carry out simple one and two-step job instructions"; "decreased ability to maintain attention, concentration and memory"; and "decreased ability to withstand the stress and pressures associated with daily work activities." AT 394-95. Dr. Kalman also assigned plaintiff a Global Assessment of Functioning score of 50, indicating serious mental impairment. AT 395. Finally, Dr. Kalman noted that plaintiff's condition was not expected to improve significantly in the next 12 months. Id.

The ALJ discounted Dr. Kalman's opinion, assigning it "reduced" weight, because

> it understates [plaintiff'] mental capacity and is inconsistent with the generally adequate mental functioning that [plaintiff] exhibited at numerous mental evaluations. In addition, the opinion is inconsistent with the admitted effectiveness of [plaintiff's] psychiatric medications. Moreover, the opinion is inconsistent with [plaintiff's] generally adequate daily living activities and social activities . . . .

AT 32 (citations to the administrative transcript omitted).

As an initial matter, plaintiff argues that the ALJ was required to provide clear and convincing reasons for discounting Dr. Kalman's opinion because the only other physician's opinion in the record regarding the impact of plaintiff's mental impairments that conflicted with Dr. Kalman's opinion was the one provided by Dr. Dalton, a non-examining physician who did not base his opinion on an independent evaluation of plaintiff. However, plaintiff provides no authority for her assertion that this higher standard should be applied, especially in light of the fact that Dr. Dalton provided a conflicting opinion regarding the impact of plaintiff's mental impairments. See Lester, 81 F.3d at 830 (noting that a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons). Nevertheless, even under the "clear and convincing reasons" standard advanced by plaintiff, the ALJ's rationale for discounting Dr. Kalman's opinion was proper and was supported by substantial evidence in the record.

/////

/////

6

1       First, the ALJ properly cited to the fact that Dr. Kalman's opinion was inconsistent with
the generally unremarkable objective medical findings contained in plaintiff's mental status
examination results. Molina v. Astrue, 674 F.3d 1104, 1111-12 (9th Cir. 2012); Meanel, 172
F.3d at 1114 (an ALJ may discount a treating physician's opinion that is "conclusory and
unsubstantiated by relevant medical documentation"). Indeed, the mental status examination
notes in the record largely contain unremarkable findings, including findings regarding plaintiff's
attention, concentration, and memory—indicating that plaintiff was alert and oriented, attentive
and organized, and demonstrated good insight and intact memory—and her ability to engage in
social interaction with others—describing plaintiff as cooperative, pleasant, and having a bright
mood. AT 468-70, 477-79, 480, 482-83, 485-86, 492-94. This objective evidence conflicted with
the severe limitations opined by Dr. Kalman regarding the functional areas of social interaction
and attention, concentration, and memory. Accordingly, the ALJ reasonably relied on it to
support his assessment of Dr. Kalman's opinion.

        Second, the ALJ also properly considered the fact that plaintiff's psychiatric medications
were effective in controlling plaintiff's psychiatric symptoms as a reason to discount Dr.
Kalman's opinion. A condition that can be controlled or corrected by medication is not disabling
for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc.
Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs.,
729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983). Here, the
treating records show the psychiatric medications calmed her anxiety and largely ameliorated
several of her alleged mental symptoms. AT 482-83, 485-86. Accordingly, substantial evidence
supported the ALJ's reasoning.

        Finally, the ALJ noted that the evidence of plaintiff's generally adequate daily living
activities and social activities conflicted with Dr. Kalman's opinion. Plaintiff's own testimony at
the hearing and statements throughout the record demonstrate that plaintiff used public
transportation, lived with others, shopped in stores, attended group counseling sessions, and
attended Delta College, where she took 11 units of classes, attended class five days per week, and
studied with others. AT 78-80, 85, 87, 94-96, 282-83, 485. Similarly, plaintiff stated to one of

7

her physicians in July of 2013 that she was still actively seeking employment, was redoing her resume, and had a desire to someday obtain work counseling women who are victims of physical and sexual abuse.  AT 489.  All of these daily activities generally conflicted with Dr. Kalman's opinion that plaintiff's mental impairments precluded her from having any social interaction with supervisors, coworkers, and the public.  AT 394.   The ALJ properly relied on such evidence to support his decision to accord reduced weight to Dr. Kalman's opinion.  Hensley v. Colvin, 600 F. App'x 526, 527 (9th Cir. 2015) (unpublished) (citing Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990)) (upholding ALJ's decision to discount examining psychologist's opinion because it was inconsistent with the plaintiff's reported daily activities).

     Plaintiff argues that the ALJ erred in finding Dr. Dalton's non-examining opinion more persuasive than Dr. Kalman's opinion.  However, the ALJ properly discounted Dr. Kalman's opinion for the reasons discussed above.  Moreover, the objective medical evidence in the record that the ALJ cited to as substantial support for discounting Dr. Kalman's opinion also substantially supported Dr. Dalton's opinion that while plaintiff suffered from some limitations stemming from her mental impairments, they were not so severe as to be entirely disabling.  AT 468-70, 477-79, 480, 482-83, 485-86, 492-94.  The mere fact that Dr. Dalton was a non-examining physician did not preclude the ALJ from finding his opinion more persuasive than Dr. Kalman's properly discounted opinion in light of the fact that the objective medical evidence in the record generally supported Dr. Dalton's opinion.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (noting that the "opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); see Bray v. Astrue, 554 F.3d 1221, 1227 (9th Cir. 2009) (holding that the ALJ properly relied "in large part on the DDS physician's assessment" in discounting a treating physician's testimony regarding the claimant's functional limitations and in assessing the claimant's overall RFC).

/////

/////

/////

2. <u>Dr. Dalton</u>

Plaintiff also argues that the ALJ "changed" the opinion of Dr. Dalton to improperly find that Dr. Dalton's opinion supported the ALJ's RFC determination. In particular, plaintiff contends that Dr. Dalton did not opine that plaintiff could perform work involving limited social interaction as the ALJ characterized it in his decision, but actually opined that plaintiff "would be best suited to work with minimal social demands and little to no public contact." AT 32, 158. Plaintiff asserts that Dr. Dalton's opinion on this aspect of plaintiff's mental functioning as he had actually stated it in his opinion was more in line with Dr. Kalman's opinion that plaintiff was unable to interact at all with supervisors, coworkers, and the public. Plaintiff's argument is not well taken. While Dr. Dalton noted in his opinion that plaintiff would be "best suited" to work with minimal to no social interaction, he further clarified in the section of his opinion explaining the specific mental functional limitations he opined that plaintiff was capable of work involving "limited social or public interactions." AT 159. The ALJ paraphrased this opinion in his decision as "limited social interaction," and reasonably incorporated it into his RFC determination by finding that plaintiff "is limited to no more than occasional interaction with the public, coworkers, and supervisors." AT 50, 55.

3. <u>Nurse Practitioner Ngo</u>

Plaintiff contends further that the ALJ erred by giving "little weight" to Nurse Practitioner Ngo's opinion that plaintiff should avoid prolonged sitting and standing on the basis that that opinion was not produced by an acceptable medical source. The court agrees with plaintiff that the ALJ erred in providing this reasoning for discounting Nurse Practitioner Ngo's opinion. The Commissioner's own regulations clearly include nurse practitioner as a proper "other medical source" to be used as evidence to show the severity of a claimant's impairments. 20 C.F.R. § 416.913(d)(1). Accordingly, an ALJ is not permitted to reject an opinion from such a medical source merely because it is not from an "acceptable medical source" as that term is defined in the applicable regulations. Nevertheless, while the ALJ erred in providing this rationale in support of his assessment of Nurse Practitioner Ngo's opinion, that error was harmless here because the ALJ also provided other, proper reasons for discounting that opinion that were supported by

9

substantial evidence. Specifically, the ALJ reasoned that Nurse Practitioner Ngo's opinion:

> is inconsistent with the routine and conservative nature of the treatment for [plaintiff's] back disorders and asthma. In addition, the opinion is inconsistent with the relatively normal physical functioning that [plaintiff] exhibited during the Internal Medicine Consultative Examination (CE) conducted on March 23, 2013. Moreover, the opinion is inconsistent with the effectiveness of [plaintiff's] pain medications.

AT 32 (citations to the administrative transcript omitted). The ALJ was required to provide reasons that were specific and "germane" to Nurse Practitioner Ngo's opinion in order to properly discount it. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); see also Tracey v. Astrue, 2011 WL 902201, at *8 (E.D. Cal. Mar. 15, 2011) (applying the "germane" reasons standard to the consideration of a nurse practitioner's opinion). These three additional reasons provided a proper basis to support the ALJ's decision.

First, the ALJ properly reasoned that Nurse Practitioner Ngo's opinion was inconsistent with the evidence in the record detailing the routine and conservative nature of the treatment plaintiff received for her back issues and asthma. See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (holding that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment" under the more stringent "clear and convincing" reasons standard). Indeed, the record demonstrates that even Nurse Practitioner Ngo herself only prescribed plaintiff with pain medication to control her alleged back pain and recommended that plaintiff engage in regular exercise and stretching. AT 460, 464. Accordingly, the record supports the ALJ's proper reasoning.

Second, the ALJ also properly determined that the inconsistency between the limitations contained in Nurse Practitioner Ngo's opinion and the relatively normal physical functioning plaintiff exhibited during Dr. Sharma's consultative examination undermined the probative value of Nurse Practitioner Ngo's opinion. Dr. Scharma's examination notes show that plaintiff exhibited negative straight leg raises, no muscle spasm in her back, and no evidence of clubbing, cyanosis, edema, or ulcerations in her extremities, which conflicted with Nurse Practitioner Ngo's opinion that plaintiff should avoid prolonged sitting and standing. AT 402-03. Dr. Scharma's

other exam findings also indicated that Nurse Practitioner Ngo's opinion was too restrictive. AT 400-03. This, too, was a germane reason for discounting Nurse Practitioner Ngo's opinion that was supported by substantial evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding that the ALJ properly discounted non-physician opinions because they were inconsistent with the objective medical evidence in the record).

Finally, the ALJ properly considered the fact that plaintiff's pain medications were effective as a reason to discount Nurse Practitioner Ngo's opinion. See Warre, 439 F.3d at 1006; Montijo, 729 F.2d at 600; Odle, 707 F.2d at 440. The treating records show the pain medications plaintiff had been prescribed were effective in controlling plaintiff's alleged back pain, the primary symptom plaintiff attributed to her physical impairments. AT 454, 460-61. Accordingly, substantial evidence supported the ALJ's reasoning.

In short, the ALJ provided multiple valid reasons for discounting Nurse Practitioner Ngo's opinion that were germane to that source. Accordingly, the error the ALJ committed in discounting her opinion on the basis that she was not an acceptable medical source is harmless and does not warrant remand.

B. *The ALJ did not err in Rendering his Adverse Credibility Determination*

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7p; SSR 95-5p; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant non-exertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, plaintiff contends that the ALJ erred in rendering his adverse credibility determination because he relied on his personal observations of plaintiff at the hearing as a rationale in support of that finding. Plaintiff argues that the ALJ's personal observations of plaintiff at the hearing do not provide the clear and convincing reasons required to support the ALJ's credibility conclusion.

Although plaintiff is correct in noting that the ALJ's observations of the claimant at the hearing may not form the sole basis for discrediting the claimant's testimony, such observations may be used in the overall credibility evaluation. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985); SSR 96-7p, at *5 ("In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements."). Here, while the ALJ did rely on his own personal observations at the hearing to discount plaintiff's testimony, he did not solely rely on that rationale to support his adverse credibility determination. The ALJ provided

multiple additional reasons for finding plaintiff's testimony less than fully credible. Specifically, he also reasoned that plaintiff's claims regarding the extent of her pain and symptoms were less than fully credible because: (1) they were not well supported by the objective medical evidence in the record; (2) plaintiff made inconsistent statements regarding the symptoms associated with her alleged mental impairments; and (3) plaintiff's sporadic work history indicated that her continuing unemployment was not actually due to her medical impairments.

As an initial matter, plaintiff does not specifically contest that the ALJ erred in also providing any of these other reasons in support of his adverse credibility determination, instead focusing her argument regarding that determination solely on the fact that the ALJ used his own observations at the hearing as one of his supporting reasons. The court need not address an issue where the claimant "failed to argue [the] issue with any specificity in [his or her] briefing." Carmickle v. Comm'r, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Nevertheless, the ALJ's other, uncontested reasons consisted of clear and convincing reasons for discounting plaintiff's testimony that were supported by substantial evidence.

First, the ALJ properly considered the fact that plaintiff's testimony that she suffered from debilitating impairments conflicted with the more mild objective medical findings in the record. With regard to plaintiff's physical impairments, the ALJ noted that plaintiff exhibited largely normal signs of physical functioning during the consultative examination conducted on March 23, 2013. AT 52, 399-404. The ALJ also cited to the lack of serious findings regarding plaintiff's spine and respiratory functioning, and to the fact that plaintiff had received only conservative and routine treatment for her impairments. E.g., AT 52-53, 326, 461-63. With regard to plaintiff's mental impairments, her treating records reflect that her psychiatric condition was largely adequate and showed improvement over time because her psychiatric medications were effective. E.g., AT 53, 326, 475-79. Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681. Accordingly, the ALJ did not err in providing this reason for discounting plaintiff's testimony in light of the other clear and convincing reasons he provided that are addressed below.

Second, the ALJ also properly determined that plaintiff's multiple contradictory statements regarding the impact of her mental impairments undermined her credibility. As the ALJ noted, plaintiff testified at the hearing that she did not spend time with anyone, but had admitted earlier that she spent time with others on a weekly basis. AT 53, 85, 97, 283-84. Similarly, plaintiff complained of auditory hallucinations during her consultative examination on February 26, 2013, but specifically denied experiencing them on numerous other occasions during the period between August of 2012 and early 2014. AT 53, 326, 394, 479, 494. The ALJ was permitted to rely on these discrepancies in plaintiff's statements to support his adverse credibility determination. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may use ordinary techniques of credibility evaluation, such as inconsistent statements); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (ALJ may discredit claimant's allegations based on inconsistencies in the testimony or on relevant character evidence).

Finally, the ALJ reasonably determined that the evidence of plaintiff's sporadic work history indicated that her continuing unemployment may be due to factors other than her medical impairments. A sporadic work history may show that a claimant has little propensity to work and may negatively affect a claimant's credibility regarding his or her ability to work. See Thomas, 278 F.3d at 959. Plaintiff's work history supports the adverse credibility finding made by the ALJ. Indeed, the record shows that plaintiff worked part-time as a food server for just under a year between May of 1986 and April of 1987, and part-time as a fast food worker between January of 2008 and June of 2008. AT 244, 263-65. The ALJ reasonably determined that plaintiff's extremely sporadic work history, which consisted of only part-time work, undermined plaintiff's claim that she was unemployed due to her impairments. Accordingly, the ALJ properly based his adverse credibility determination, in part, on plaintiff's sporadic work history.

In sum, the ALJ provided multiple clear and convincing reasons for discounting plaintiff's testimony that were supported by substantial evidence in the record. Therefore, plaintiff's contention that the ALJ erred in rendering his adverse credibility determination is without merit.

/////

/////

C. *The ALJ Properly Determined that Plaintiff Could Perform Other Work at Step Five*

Finally, plaintiff argues that the ALJ erred by finding that plaintiff could perform the representative occupations of small parts assembler, bottle packer, and sewing machine operator given her RFC, all of which the Dictionary of Occupational Titles ("DOT") defines as Specific Vocational Preparation ("SVP") level 2 jobs, despite finding that plaintiff was limited to simple, routine, and repetitive tasks. Plaintiff contends that such an RFC limitation necessarily limits plaintiff to only jobs requiring SVP level 1 tasks, and the ALJ erred by determining that plaintiff could perform jobs requiring an ability to perform SVP level 2 tasks. However, plaintiff's argument is not well taken because the ALJ explicitly defined in his statement of plaintiff's RFC limitations that her limitation to simple, routine, and repetitive tasks means that plaintiff can perform work at SVP levels 1 and 2. AT 50. Moreover, during the hearing, the ALJ specifically defined the limitation to simple, routine, and repetitive tasks in his hypotheticals to the vocational expert ("VE") as meaning the ability to perform work at SVP levels 1 and 2. AT 118-20. In response to the hypothetical that reflected all of the limitations contained in the ALJ's well-reasoned RFC determination, the VE testified that a person with such limitations—including the limitation to simple, routine, and repetitive tasks as the ALJ had defined it—could perform work as a small parts assembler, bottle packer, and sewing machine operator, and that each of those jobs were defined in the DOT as SVP level 2 jobs. AT 120-21. The ALJ properly relied on this testimony as substantial evidence at step five to determine that plaintiff's RFC allowed her to perform other jobs that exist in significant numbers in the national economy, specifically, the three occupations the VE provided in his testimony. AT 56-57, 120-21. Therefore, the ALJ did not err in rendering his step five determination.

/////
/////
/////
/////
/////
/////

V.     CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is granted; and

3. Judgment is entered for the Commissioner.

Dated: October 27, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 berglund2332.ss